Jeffrey Wilson McCoy (CO No. 43562), *pro hac vice application pending*
Steven J. Lechner (CO No. 19853), *pro hac vice application pending*
MOUNTAIN STATES LEGAL FOUNDATION
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
(303) 292-1980 (facsimile)
jmccoy@mountainstateslegal.com
lechner@mountainstateslegal.com

Michael W. Pearson (AZ No. 016281)
Curry, Pearson, & Wooten, PLC
814 West Roosevelt
Phoenix, Arizona 85007
(602) 258-1000
(602) 523-9000 (facsimile)
mpearson@azlaw.com

Attorneys for Plaintiff Andrew Brigida and Putative Class Counsel

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ANDREW J. BRIGIDA, on behalf of himself and the Class he seeks to represent, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| UNITED STATES DEPARTMENT OF TRANSPORTATION; ANTHONY R. FOXX, Secretary, U.S. Department of Transportation; FEDERAL AVIATION ADMINISTRATION; MICHAEL HUERTA, Administrator, Federal Aviation Administration; STEPHANIE JONES, Acting Director, Departmental Office of Civil Rights, U.S. Department of Transportation, | ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | |

Case No.

**CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES**

**DEMAND FOR JURY TRIAL**

Plaintiff, Andrew J. Brigida, by and through its attorneys, hereby files this Class Action Complaint for Declaratory and Injunctive Relief and Damages against the above-named Defendants on behalf of himself and the Class he seeks to represent.

## JURISDICTION AND VENUE

1.     This Court has jurisdiction, pursuant to 28 U.S.C. § 1331, because the matter in controversy arises under the Constitution and laws of the United States, including but not limited to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and the Fifth Amendment to the United States Constitution.

2.     Venue rests properly in this Court, pursuant to 28 U.S.C. § 1391(e), because "a substantial part of the events . . . giving rise to the claim occurred" within this judicial district.

## PARTIES

3.     Plaintiff, Andrew J. Brigida, is a current resident of Arlington, Virginia. He brings this action on behalf of himself individually, and on behalf of a Class of persons similarly situated as described below.

4.     Defendant United States Department of Transportation ("DOT") is a cabinet-level department within the Executive Branch of the federal government. Through its various agencies, the DOT promulgates regulations and policies governing transportation within the United States, including aviation.

5.     Defendant Anthony R. Foxx is the Secretary of the DOT.  In that capacity, Secretary Foxx is responsible for overseeing the actions of all the employees and officers within the agencies of the Department, including the Federal Aviation Administration.

6.     The Federal Aviation Administration ("FAA") is the national aviation authority of the United States.  As an agency of the DOT, it has authority to regulate all aspects of American civil aviation.  The FAA is responsible for setting policies for the hiring of Air Traffic Controllers in the United States.

7.     Michael Huerta is the Administrator of the FAA.  Administrator Huerta oversees more than 47,000 FAA employees and is responsible for ensuring the agency and its employees are the best prepared and trained professionals to meet the growing demands and requirements of the aviation industry.  In this capacity Administrator Huerta is responsible for setting the policies of the FAA, including hiring policies for Air Traffic Controllers.

8.     Defendant Stephanie Jones is the Acting Director of the DOT Departmental Office of Civil Rights.  In this capacity, Acting Director Jones is the designated advisor to the Secretary of Transportation on matters relating to civil rights within the DOT.  Acting Director Jones is also responsible for managing the Departmental Office of Civil Rights, which enforces civil rights and regulations within the DOT, including Title VII of the Civil Rights Act of 1964.

## LEGAL BACKGROUND

### A.     TITLE VII OF THE CIVIL RIGHTS ACT OF 1964.

9.     Title VII prohibits employment discrimination on the basis of race, color, religion, sex, or national origin.  42 U.S.C. § 2000e; *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009).

10.     Specifically, Title VII provides that it is unlawful employment

discrimination "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e(a)(1).

11.    Title VII prohibits discrimination against employees of, and applicants for employment in, the federal government.  42 U.S.C. § 2000e-16.

12.    Absent a valid defense, Title VII prevents a government agency from refusing to accept the outcome of a race-neutral hiring process solely because of the racial makeup of the successful applicants.  *See Ricci*, 557 U.S. at 579.

13.    Specifically, a government agency may not disregard the outcome of a race-neutral hiring process unless it has a "strong basis in evidence to believe it will be subject to disparate-impact liability if it fails to take the race-conscious, discriminatory action."  *See id.* at 585.  An agency will be liable for disparate-impact discrimination only if a hiring process is not job related and consistent with business necessity, or if there exists an equally valid, less discriminatory alternative that served the needs of the agency but the agency refused to adopt.  *Id.* at 547.

**B.    EQUAL PROTECTION COMPONENT OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT.**

14.    The Due Process Clause of the Fifth Amendment to the United States Constitution provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law . . . ."  U.S. Const. amend. V.

15.    Like the Equal Protection Clause of the Fourteenth Amendment, the Due

Process Clause of the Fifth Amendment protects persons from race-based discrimination by the federal government. *Buckley v. Valeo*, 424 U.S. 1, 93 ("Equal protection analysis in the Fifth Amendment area is the same as that under the Fourteenth Amendment . . . .")

16.     A government-imposed racially discriminatory preference is constitutional only if the government demonstrates that the preference was necessary to achieve a compelling state interest. *Adarand Constructors, Inc. v. Peña*, 515 U.S. 200, 227 (1995).

17.     Governments may use racially discriminatory preferences only in remedying "extreme" cases of "systematic[]" patterns of deliberate racial discrimination to "break down patterns of deliberate exclusion." *City of Richmond v. J.A. Croson Co.* 488 U.S. 469, 509 (1989) ("*Croson*").

18.     Therefore, in order to establish a compelling interest, the government must "identify" the invidious discrimination to be remedied "with some specificity before [it] may use race-conscious relief . . . ." *Croson*, 488 U.S. 505.  A mere showing of disparity in not sufficient to demonstrate extreme cases of systematic patterns of deliberate racial discrimination. *Western States Paving Co. v. Washington State Dept. of Transp.*, 407 F.3d 983, 1000 (9th Cir. 2005) ("This oversimplified evidence is entitled to little weight, however, because it does not account for factors that may affect the relative capacity of [Disadvantaged Business Enterprises] to undertake contracting work."); *Associated General Contractors of Ohio, Inc. v. Drabik*, 214 F.3d 730, 736 (6th Cir. 2000). ("[E]vidence of mere statistical disparities has been firmly rejected as insufficient by the Supreme Court, particularly in a context such as contracting, where special qualifications are so important.").

# FACTUAL BACKGROUND

**A.    FAA's Change In Hiring Practices For Air Traffic Controllers.**

19.    In 1989, the FAA established the Air Traffic-Collegiate Training Initiative ("CTI") program to develop, deliver, and implement air traffic control recruiting, selection, and training.

20.    The objective of the CTI program was to develop a professional air traffic controller workforce that possessed the skills necessary to succeed in training at a lower cost to the government.

21.    In order to achieve the objectives of the CTI program, the FAA entered into partnership agreements with colleges, universities and other schools ("CTI Institutions") in order to administer CTI programs throughout the country.

22.    Graduates from these CTI programs were required to pass a validated air traffic aptitude test, known as the Air Traffic Control Selection and Training examination ("AT-SAT") in order to be eligible for employment as a trainee controller.

23.    The AT-SAT is an aptitude assessment test developed to assess the likelihood of an applicant successfully learning Air Traffic Control Specialist ("ATCS") skills as well as a valid predictor of achievement of Certified Professional Controller ("CPC") status.  CPC status is achieved after the successful completion of air traffic training at the applicant's first assigned field facility.

24.    The AT-SAT tests for characteristics needed to effectively perform as an air traffic controller.  The characteristics include numeric ability, prioritization, planning, tolerance for high intensity, decisiveness, visualization, problem-solving, and movement

detection.

25.    The FAA developed the AT-SAT in approximately 2000-2001 in order to provide a selection tool for new applicants for ATCS positions within the FAA.

26.    Since the FAA first instituted the AT-SAT, it has been validated multiple times to ensure the test was in accord with the law and professional guidelines.  The AT-SAT was most recently validated in March of 2013.

27.    Prior to 2014, and after the introduction of the CTI program, graduates from CTI programs that passed the validated AT-SAT assessment entered a direct hire pool of applicants, were placed on a "Qualified Applicant Register" List, and were given hiring preference for ATCS positions.

28.    Prior to the introduction of the CTI program, the FAA hired from two main sources.  First, the FAA hired from military trained controllers ("Veteran's Recruitment Appointment" or "VRAs"), who had separated or retired from military service.  Second, the FAA hired through General Public Announcement ("GPA"), commonly referred to as Off-the-Street ("OTS") hiring.

29.    OTS hiring most often resulted in candidates lacking air traffic control or college experience.

30.    All air traffic controller applicants, regardless of source, were required to take the AT-SAT assessment before the FAA deemed the applicant a qualified applicant.

31.    The FAA identified problems with the OTS hiring program.  Besides being expensive to administer, the FAA deemed the quality of candidates unsatisfactory and noted high training failure ("washout") rates with OTS applicants.  As a result of these

issues, the FAA developed the CTI program.

32.    Since the CTI program was instituted, most air traffic controller hiring has been from the pool of CTI graduates and VRAs.

33.    In 2005, the FAA forecast a controller shortage due to a large number of controllers who were becoming eligible for retirement.  This retirement eligible group had been hired after the 1981 Professional Air Traffic Controllers Organization strike.

34.    The CTI schools were unable to keep up with the increased demand for replacement controllers and, as a result, the FAA made an OTS hiring announcement to supplement the VRA and CTI applicant pools.

35.    At the end of 2012, the FAA announced that it would not be conducting any further OTS hiring because the CTI schools, along with the VRA applicant pool, were producing sufficient quantities of qualified applicants to fulfill demand.

36.    The FAA controller hiring plan required the FAA to hire over one thousand controllers per year in calendar years 2012, 2013, and 2014.  Despite this stated demand for ATCS, the FAA slowed and eventually froze the processing and hiring of new ATCS applicants.

37.    The CTI program, and VRA applicant pool, met this demand and successfully prepared air traffic control applicants, including minority candidates, for ATCS positions.

38.    In 2013, the FAA published an employment plan that provided that the FAA was "planning to open a general public announcement in FY 2014 to add more depth and diversity to our controller hiring sources."  Federal Aviation Administration, *A*

*Plan for the Future: 10-Year Strategy for the Air Traffic Control Workforce 2013-2022*

44 (2013), *available at* https://www.faa.gov/air_traffic/publications/controller_staffing/

media/CWP_2013.pdf.

39.     On February 8, 2013, Terry Craft, the FAA's CTI program manager, sent

an e-mail to CTI schools that stated that he saw the CTI applicant pool as diverse.[1]

40.     Also in February 2013, the FAA published a report on the CTI program that

provided that "it is clear that the FAA AT-CTI schools are making great strides to

incorporate minority students and faculty into their programs . . . ."  Federal Aviation

Administration, *Air Traffic Collegiate Training Initiative (AT-CTI) Partner School*

*Diversity and Outreach 2012-13* 1 (February 25, 2013), *available at*

http://www.ctiassociation.org/app/download/2351245/AT-CTI+Diversity+and+Outreach

+Complete+Report.pdf.

41.     In 2012-2013, 11.5 percent of CTI school enrollees were African-

American.  *Id.* at 3.  This percentage of African-American enrollees exceeded the

percentage of African Americans in the civilian labor workforce pool in the same years.

United States Office of Personnel Management, *Federal Equal Opportunity Recruitment*

*Program (FEORP) for Fiscal Year 2012 Report to the Congress* 8 (January 2014),

*available at* https://www.opm.gov/policy-data-oversight/diversity-and-

inclusion/reports/feorp-2012.pdf.

42.     On information and belief, and after a reasonable opportunity for discovery,

further documents from the FAA demonstrate that the CTI institutions provide a

_____

[1] A copy of this e-mail is attached hereto as Exhibit 1.

9

sufficiently diverse applicant pool to the FAA for ATCS positions.

43.    On or around December 30, 2013, Joseph Teixeira, the FAA's Vice President for Safety and Technical Training, sent an e-mail ("Teixeira e-mail") to the CTI schools about the future of hiring for ATCS positions.[2]

44.    The Teixeira e-mail provided, *inter alia*, that "[r]ecently, the FAA completed a barrier analysis of the ATC occupation pursuant to the Equal Employment Opportunity Commission's (EEOC) Management Directive 715.  As a result of the analysis, recommendations were identified that we are implementing to improve and streamline the selection of ATC candidates."

45.    The Teixeira e-mail further provided "[a] nationwide competitive FG-01 vacancy announcement open to all U.S. Citizens will be issued in February 2014.  Any individual desiring consideration for employment (including CTI graduates) MUST apply.  Existing inventories of past applicants will not be used."

46.    The Teixeira e-mail also provided that "[t]he existing testing process has been updated.  The revised testing process is comprised of a biographical questionnaire (completed as part of the application process) and the cognitive portion of the AT-SAT.  The cognitive portion of the AT-SAT will be administered only to those who meet the qualification standards and pass the biographical questionnaire.  Applicants for the February 2014 announcement will be required to take and pass the new assessments in order to be referred on for a selection decision."

47.    In sum, on or around December 30, 2013, the FAA eliminated the CTI

---

[2] A copy of the  Teixeira e-mail is attached hereto as Exhibit 2.

Applicant Register, which resulted in Plaintiff Brigida, and other putative Class Members, losing their employment preference and opportunity.

48.    The FAA subsequently scheduled a teleconference with the CTI schools on January 8, 2014.

49.    During the January 8, 2014 teleconference, Teixeira stated that "there were no special interest groups involved in the design of the [new] FAA policy at all.  This was done by experts in the human resources department and civil rights . . . ."

50.    During the January 8, 2014 teleconference, Teixeira also stated that "[w]e really have not announced these changes to anyone other than to CTI schools, and you received that for the first time on the 30th of December.  There's been no announcement . . . ."

51.    On information and belief, and after a reasonable opportunity for discovery, several members of the FAA HR and CR Offices had notified, *inter alia*, the National Black Coalition of Federal Aviation Employees ("NBCFAE"), and other select special interest groups, that the FAA was going to eliminate the Qualified Applicant Register prior to the announcement to the CTI institutions, as well as specific detailed information on the FAA's new hiring practices.

52.    On information and belief, and after a reasonable opportunity for discovery, several members of the FAA Human Resources ("HR") and Civil Rights ("CR") Offices had been working with the NBCFAE to eliminate the CTI Qualified Applicant Register since 2010.

53.    On June 20, 2013, FAA officials met with members of the FAA National

11

Employee Association Forum, which is composed of eight employee associations that represent various minority, women, and disadvantaged sub-groups, including NBCFAE. The stated purpose of this meeting was to brief the various employee associations of recommended changes in the Air Traffic Controller hiring process.

54.    Among the persons conducting the June 2013 briefing was an FAA consultant named Dr. James Outtz.  Dr. Outtz's presented information about a recently concluded Barrier Analysis of the FAA Air Traffic Controller hiring process.  Dr. Outtz stated that the FAA's hiring process purportedly had a disparate impact on minority candidates, primarily African-American males.

55.    Several documents demonstrate that the NBCFAE had information on how applicants for the February 2014 announcement could increase their chances of advancing in the hiring process.[3]  The NBCFAE e-mailed their members with advice on how to apply for the open Air Traffic Controller positions.  *See* Exhibits 7–8.  This information was provided by a FAA HR employee who was also a member of the NBCFAE.  *See* Exhibit 7.

56.    These documents further demonstrate that NBCFAE National President Roosevelt Lenard, Jr. was in contact with senior FAA officials, including Carrolyn Bostick, the FAA management official in charge of human resources ("AHR-1"), about Lenard's desire to eliminate the entire Qualified Applicant Register.  *See* Exhibit 8.

57.    FAA HR Official Bostick assured NBCFAE National President Lenard that the Register would be "purged" and none of these post-assessment applicants would be

---

[3] Copies of these documents are attached hereto as Exhibits 3 through 9.

offered a letter of employment.  *Id.*

58.    On information and belief, and after a reasonable opportunity for discovery, numerous FAA employees and officials are active members of the NBCFAE.

59.    In February 2014, FAA spokesman Tony Molinaro, Public Affairs Officer for the FAA in the Great Lakes and Central Regions, stated that the decision to change the FAA's hiring process for Air Traffic Controllers was made to "add diversity to the workforce."  Anna Burleson, *Want to be an air traffic controller? UND says FAA has 'dumbed down the process'*, Grand Forks Herald, March 5, 2014, *available at* http://www.grandforksherald.com/content/want-be-air-traffic-controller-und-says-faa-has-dumbed-down-process.

60.    Various other FAA officials and employees initially stated that the change in the hiring process was for diversity purposes.

61.    On information and belief, and after a reasonable opportunity for discovery, there were approximately 2,000 to 3,500 qualified applicants that possessed a degree from a CTI school, had passed the AT-SAT, and were on the FAA's Qualified Applicant Register prior to the FAA's 2014 decision to eliminate the Register.   Plaintiff and putative Class Representative Brigida was one of those qualified applicants.

**B.    Plaintiff Brigida.**

62.    On May 13, 2013, Plaintiff Brigida took, and successfully passed the AT-SAT assessment with the top numerical score possible of 100%.

63.    On August 13, 2013, Plaintiff Brigida graduated from an FAA approved CTI institution, Arizona State University ("ASU"), and was recommended to the FAA by

ASU on August 28, 2013.

64.    Subsequently, the FAA placed Plaintiff Brigida on the Qualified Applicant Register.

65.    On or about January 27, 2014, the FAA informed Plaintiff Brigida of the changes to the Air Traffic Controller hiring process, that the Qualified Applicant Register was being eliminated, and that Mr. Brigida would need to reapply under the new hiring process if he wished to be considered for an Air Traffic Controller position.

66.    On February 25, 2014, Plaintiff Brigida contacted an Equal Employment Opportunity ("EEO") counselor for the DOT by filing an informal electronic complaint, and alleged that the FAA discriminated against him on the basis of race and gender by changing its Air Traffic Controller hiring practice in order to achieve more diversity.

67.    On March 31, 2014, Plaintiff Brigida received his notice of right to file a formal EEO Complaint with the DOT.

68.    On April 12, 2014, Plaintiff Brigida filed a formal EEO Complaint, individually and as a putative Class Representative on behalf of those similarly situated, with the DOT.[4]

69.    The DOT has neither certified nor denied certification of the putative Class, nor has it responded to the allegations in the EEO Complaint from the date of the filing of the EEO Complaint (April 12, 2014) through the date of filing of this Complaint.

## CLASS ACTION ALLEGATIONS

70.    Plaintiff incorporates the allegations in the preceding paragraphs as if fully

---

[4] Plaintiff Brigida's formal EEO Complaint is incorporated by reference herein.

set forth here.

71.    This is a class action brought by Plaintiff Brigida on his own behalf and on behalf of others similarly situated, pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure and 29 C.F.R. § 1614.204.    The putative Class Plaintiff Brigida seeks to represent is the approximately 2,000 to 3,500 qualified applicants that possessed a degree from a CTI school, had passed the AT-SAT, and were on the FAA's Qualified Applicant Register prior to the FAA's 2014 decision to eliminate the Register.

72.    Commonality.    There are common questions of law, practices, and fact as to the members of the Class which predominate over questions affecting only individual members of the Class.    Specifically, this case challenges the FAA's decision to eliminate or purge the Qualified Applicant Register resulted in all members of the Class being eliminated from hiring consideration, even though they had graduated from a CTI school and passed the AT-SAT assessment.    There are no unique factual or practice factors that would make Class status disadvantageous to any member of the Class.    The FAA instituted a single decision to purge the Qualified Applicant Register and adopt a new hiring practice for Air Traffic Controllers, which affected all Class members. Defendants' motivation and purported evidence for the decision is common to all Class members.

73.    Typicality.    Plaintiff Brigida's claims for the remedies stated herein are typical of the claims of all members of the putative Class because all members of the prospective Class sustained similar injuries and damages arising out of Defendant's common course of unlawful conduct.    The injuries and damages of all members of the

15

Class were caused by the FAA's single decision to purge the Qualified Applicant Register and adopt a new hiring practice for Air Traffic Controllers.

74.    Numerosity.    The potential quantity of members of the putative Class as defined is so numerous that joinder of all members would be unfeasible and impractical. The disposition of their claims through this class action will benefit both the parties and this Court.    While the exact quantity of members of the Class is unknown at this time, it is estimated that Class number is in excess of 2,000 individuals.    The quantity and identity of such membership is easily ascertainable through inspection of Defendants' records.

75.    Adequacy.    Plaintiff Brigida is an adequate representative of the putative Class and as Class Representative will fairly protect the interests of the members of the Class, has no interests antagonistic to the members of the Class, and will vigorously pursue this suit via attorneys who are competent, skilled and experienced in litigating complex matters of this type.    Putative Class Counsel are competent and experienced in litigating large cases, are preeminent in their fields, and members of the firms have experience in litigating complex matters including employment and constitutional law cases.    Approximately 400 potential Class members have contacted Plaintiff's legal counsel and approximately 175 have filed informal EEO Complaints with the FAA listing Plaintiff's legal counsel as potential legal counsel.

76.    Ascertainable Class.    The proposed Class and each subclass are ascertainable in that their members can be identified and located using information contained in Defendants' records.    Specifically the FAA's Aviation Careers Division

maintained an inventory of eligible CTI graduates and the Qualified Applicant Register comprised of the putative class.

77.    Superiority.    The nature of this action and the questions of law or fact common to Class members predominate over any questions affecting only individual members.  A class action is superior to other available methods for fairly and efficiently adjudicating this controversy for the following reasons, without limitation:

a.    This case involves federal agencies and officials and a sufficient numerous group of individual Class Members with many claims and common issues of law and fact;

b.    If each individual member of the Class was required to file an individual lawsuit, Defendants would necessarily gain an unjust advantage because Defendants would be able to exploit and overwhelm the limited resources of each individual member of the Class with Defendants' vastly superior financial and legal resources;

c.    Requiring each individual member of Class to pursue an individual lawsuit would discourage the assertion of lawful claims by the members of the Class who would be disinclined to pursue an action against Defendants because of an appreciable and justifiable fear of retaliation and permanent damage to their lives, careers and well-being;

d.    Proof of a common practice or factual pattern, of which the members of the Class experienced, is representative of the Class herein and will establish the right of each of the members of the Class to recover on the

causes of action alleged herein;

e.      The prosecution of separate actions by the individual members of the Class, even if possible, would create a substantial risk of inconsistent or varying verdicts adjudications with respect to the individual members of the Class against Defendants; and which would establish potentially incompatible standards of conduct for Defendants;

f.      Many members of the putative Class are recent college graduates with large student loan balances and the expenses and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs, while an important public interest will be served by addressing the matter as a Class Action; and

g.      The cost to the judicial system of such individualized litigation would be substantial and a waste of valuable adjudicative and judicial resources.

78.     Manageability of Class and Common Proof.  The nature of this action make this class action a particularly efficient and appropriate procedure to afford relief to Plaintiffs for the FAA's alleged unlawful actions.  Specifically, the primary issue turns upon the FAA's single decision to purge the Qualified Applicant Register and adopt a new hiring practice for Air Traffic Controllers.  Individual adjudication would prejudice Defendants opposing the Class by requiring the United States government to allocate scarce judicial resources to individually adjudicate the claims of approximately 2,000 to 3,500 air traffic controller applicants.

# FIRST CLAIM FOR RELIEF
(Violation of Title VII)

79.    Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth here.

80.    The FAA purged the Qualified Applicant Register and adopted a new hiring practice for Air Traffic Controllers with the intent and purpose of increasing the racial diversity of Air Traffic Controller applicants.

81.    By purging the Qualified Applicant Register and adopting a new hiring practice for Air Traffic Controllers, the FAA refused to accept the outcome of a race-neutral hiring process solely because of the racial makeup of the successful applicants. *See Ricci*, 557 U.S. at 579.

82.    The FAA did not have strong basis in evidence to believe its use of the CTI program would cause it to be subject to disparate-impact liability under Title VII of the Civil Rights Act of 1964.

83.    Accordingly, Defendants intentionally discriminated against Plaintiff Brigida and other putative Class members and violated Title VII of the Civil Rights Act by refusing to consider for hiring and/or hiring qualified applicants because of those applicants' race, color, religion, sex, or national origin."  42 U.S.C. § 2000e(a)(1).

84.    Plaintiff Brigida and other putative Class Members are entitled to an order declaring that the FAA's actions violated Title VII of the Civil Rights Act of 1964, an order enjoining the FAA from implementing its new hiring practice, and an order

directing the FAA to reinstate the Qualified Applicant Register.  42 U.S.C. § 2000e-5(g)(1).

85.     Additionally, Plaintiff Brigida and other putative Class Members are entitled to damages, to be determined at trial, including, but not limited to, back pay, front pay, hiring, and reinstatement.

## SECOND CLAIM FOR RELIEF
(Equal Protection)

86.     Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth here.

87.     The FAA purged the Qualified Applicant Register and adopted a new hiring practice for Air Traffic Controllers with the intent and purpose of increasing the racial diversity of Air Traffic Controller applicants.

88.     The FAA's actions, while perhaps facially neutral, were motivated by discriminatory intent and were adopted as a result of a discriminatory purpose based on race.

89.     Accordingly, the FAA's actions constituted intentional racial discrimination.  *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. 252, 265 (1977); *Shaw v. Reno*, 509 U.S. 630, 643, (1993).

90.     The FAA's racially discriminatory actions were not narrowly tailored to achieve a compelling state interest.

91.     Specifically, the FAA, prior to implementing its racially discriminatory hiring policy, did not have evidence that the CTI program failed to produce a racially diverse applicant pool for Air Traffic Controllers.

92.     Assuming, *arguendo*, that the FAA had evidence that the CTI program failed to produce a racially diverse applicant pool for Air Traffic Controllers, the FAA did not have a strong basis in evidence that this purported disparate impact was a result of previous systematic patterns of deliberate racial discrimination within the department.

93.     Therefore, the FAA's purging of the Qualified Applicant Register and adoption of a new hiring practice for Air Traffic Controllers were not made to remedy an extreme case of systematic patterns of deliberate racial discrimination.  *Croson*, 488 U.S. at 509.

94.     Accordingly, the FAA's purging of the Qualified Applicant Register and adoption of a new hiring practice for Air Traffic Controllers violated the Equal Protection Component of the Due Process Clause of the Fifth Amendment.

95.     Plaintiff Brigida and other putative Class Members are entitled to an order declaring the FAA's actions unconstitutional, an order enjoining the FAA from implementing its new hiring practice, and an order directing the FAA to reinstate the Qualified Applicant Register.

96.     Additionally, Plaintiff Brigida and other putative Class Members are entitled to damages, to be determined at trial, including, but not limited to, back pay, front pay, hiring, and reinstatement.

## THIRD CLAIM FOR RELIEF

(Failure to Complete Administrative Action)

97.     Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth here.

98.     Plaintiff Brigada's EEO Complaint has been pending with the DOT since April 12, 2014.

99.     To the extent Defendants claim any additional administrative action is still necessary regarding Plaintiff Brigada's EEO Complaint, they have a duty to expeditiously complete those actions.

100.     To the extent Defendants have not completed administrative action regarding Plaintiff Brigada's EEO Complaint, Defendants' failure to do so is agency action within the meaning the Administrative Procedure Act ("APA").  5 U.S.C. § 551(13).

101.     To the extent Defendants have not completed administrative action regarding Plaintiff Brigada's EEO Complaint, Defendants' failure to do so is subject to judicial review as final agency action for which there is no adequate remedy at law.  5 U.S.C. § 704.

102.     To the extent Defendants have not completed administrative action regarding Plaintiff Brigada's EEO Complaint, Plaintiff Brigada suffers legal wrong and is adversely affected and/or aggrieved by Defendants' failure to do so.  5 U.S.C. § 702.

103.     To the extent Defendants have not completed administrative action regarding Plaintiff Brigada's EEO Complaint, Defendants have unlawfully withheld

and/or unreasonable delayed the completion of administrative action on Plaintiff Brigada's EEO Complaint.

104.    The APA requires federal courts to compel agency action that is unlawfully withheld and/or unreasonablly delayed.  5 U.S.C. § 706(1).

105.    To the extent Defendants have not completed administrative action regarding Plaintiff Brigada's EEO Complaint, this Court has the authority, pursuant to the APA, to compel Defendants to immediately complete administrative action regarding Plaintiff Brigada's EEO Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brigada, on behalf of himself and the Class he seeks to represent, respectfully requests that this Court:

1.    Declare that the FAA's racially motivated purging of the Qualified Applicant Register and adoption of a new hiring practice for Air Traffic Controllers violated Title VII of the Civil Rights Act of 1964;

2.    Declare that the FAA's racially motivated purging of the Qualified Applicant Register and adoption of a new hiring practice for Air Traffic Controllers violated the Equal Protection Component of the Due Process Clause of the Fifth Amendment;

3.    Enter an order enjoining the FAA from implementing its new hiring practice for Air Traffic Controllers;

4.    Enter an order directing the FAA to reinstate the purged Qualified Applicant Register;

5.    Award Plaintiff Brigida and other putative Class Members damages, to be determined at trial, including, but not limited to, back pay, front pay, hiring, and reinstatement;

6.    To the extent Defendants have not completed administrative action regarding Plaintiff Brigada's EEO Complaint, enter an order compelling Defendants to immediately complete administrative action regarding Plaintiff Brigada's EEO Complaint;

7.    Award Plaintiff Brigida's and other putative Class Members' costs and attorney's fees in accordance with law, including the Equal Access to Justice Act, 28 U.S.C. § 2412; and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(k); and

8.    Award Plaintiff Brigada and other putative Class Members such further relief as this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff Brigada and other putative Class Members demand trial by jury in this action of all issues so triable.

DATED this 30th day of December 2015.

Respectfully submitted,

/s/ Jeffrey Wilson McCoy

Jeffrey Wilson McCoy (CO No. 43562)
 *pro hac vice application pending*
Steven J. Lechner (CO No. 19853)
 *pro hac vice application pending*
Mountain States Legal Foundation
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021

1

(303) 292-1980 (facsimile)
jmccoy@mountainstateslegal.com

2

lechner@mountainstateslegal.com

3

4

Michael W. Pearson (AZ No.0016281)
Curry, Pearson, & Wooten, PLC
814 West Roosevelt

5

Phoenix, Arizona 85007

6

(602) 258-1000
(602) 523-9000 (facsimile)

7

mpearson@azlaw.com

8

Attorneys for Plaintiff Andrew Brigida and
Putative Class Counsel

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit 1

From: terry.craft@faa.gov [terry.craft@faa.gov]
Sent: Friday, February 08, 2013 6:30 AM
To: Ramon Claudio
Cc: afsll@uaa.alaska.edu; anaumann@mdc.edu; asikora@broward.edu;
Brent.Spencer@erau.edu; cscott@greenriver.edu; Coynea7e@erau.edu;
danm@hesston.edu; donofrij@dowling.edu; drechsel@aero.und.edu;
dwilliams@ccbcmd.edu; dwilt@fit.edu; Deborah.abingdon@roswell.enmu.edu;
gwescott@tulsacc.edu; jeichelberger@ccbcmd.edu; jmerkt@ju.edu; Jim.Scott@ccbc.edu;
kuhlmank@msudenver.edu; linda.bracewell@minneapolis.edu; lwilkin2@aims.edu;
mike.deml@minneapolis.edu; mmcfarl2@kent.edu; mnolan@purdue.edu;
mtfrangui@gmail.com; Margaret.browning@hamptonu.edu; parrotwi@lewisu.edu;
ron.ferrara@mtsu.edu; rpace@mgc.edu; rrogus@mtsac.edu; ryan.seiler@wmich.edu;
sam.fischer@fscj.edu; sdaum@mtsac.edu; sharon.devivo@vaughn.edu;
slanderson@stcloudstate.edu; stephenwest@ou.edu; Seanfortier@letu.edu;
verne.latham@asu.edu; Webb, Donnetta; Peter Wyman; ">"@faa.gov;
afach@uaa.alaska.edu; ancds@uaa.alaska.edu; aviation@greenriver.edu;
Albert.culp@tstc.edu; beverly.byrdsong@hamptonu.edu; broganwi@lewisu.edu;
Barb.soleta@aims.edu; Brad.Sherman@tstc.edu; carey.freeman@hamptonu.edu;
ccheatum@fscj.edu; ckomsa@ccbcmd.edu; dbraun1@broward.edu;
dcushwa@uaa.alaska.edu; dgallion@fscj.edu; dlewis4@mdc.edu;
Dusty.lewis@roswell.enmu.edu; fieglr@erau.edu; forrestj@msudenver.edu;
gcomollo@greenriver.edu; gregory.mcguirk@erau.edu; greverdi@fitaviation.com;
gzlotky@mtsu.edu; hayden_scott@dwc.edu; Ida, Richard; jboerger@kent.edu;
jcain@fit.edu; john.gilding@asu.edu; joseph.gridley@asu.edu; jshakesp@broward.edu;
juan.salmon@roswell.enmu.edu; JCALAF@bayamon.inter.edu; koplinkl@dowling.edu;
lstephe4@aims.edu; Miller, Scott; mtsuatc@mtsu.edu; mummeb6e@erau.edu;
mwillet@ju.edu; Mary.Niemczyk@asu.edu; rcharles@mgc.edu; rpcapozzi@uaa.alaska.edu;
ryates@ju.edu; RBancroft@tulsacc.edu; Rosalinda.Herrera@tstc.edu;
Rusty.Chandler@cecilairport.com; sandraz@hesston.edu; sandyt@hesston.edu;
senglish@broward.edu; smithabc@erau.edu; streitmi@lewisu.edu;
Sshackelford@mtsac.edu; SteveKintner@letu.edu; trena.mathis@minneapolis.edu
Subject: Re: URGENT REQUEST: CTI Diversity initiatives

Ramon;

The panel sees the application but does not see anything that is prohibited in selecting based on merit that is anything that is prohibited.

By law the FAA or any other employer can not select an applicant based on race, color, creed, national origin, sex, and in our case and most companies, sexual orientation (Government Executive Order (Clinton 1992), not law).

The issue we have is ensuring those applying and found qualified represent diversity, which hopefully means the applicant "pool" is diverse. If we select as we are bound to, by "merit" without regard to the factors mentioned above, then the selections will hopefully represent the diversity of the pool.

My objective, should it be true, is to demonstrate that the CTI pool is as diverse as the other hiring pols including VRA and Gen Pub. There is a perception that it is not. So far I do not see this as true, so I need data to back this up before perception becomes perceived truth.

I am attempting to demonstrate, again if true, that the CTI future hiring pool is as or more

diverse, and the 36 schools do more to reach those communities than we, the FAA, or anyone else can do.

I hope that helps everyone understand what I am doing and how important it is.

Terry


Terry L. Craft
AJI-216 Manager External Training Initiatives
Air Traffic Collegiate Training Initiative
www.faa.gov/go/atcti<http://www.faa.gov/go/atcti>
Tech Ops Collegiate Training Initiative
Flight Deck Training
Out of Agency Training
202.385.6788 (Office)
202.578.7627 (Mobile)

-----Ramon Claudio <ramon.claudio@tstc.edu> wrote: -----

To: Terry Craft/AWA/FAA@FAA
From: Ramon Claudio <ramon.claudio@tstc.edu>
Date: 02/08/2013 08:57AM
cc: afsll@uaa.alaska.edu, anaumann@mdc.edu, asikora@broward.edu, Brent.Spencer@erau.edu, cscott@greenriver.edu, Coynea7e@erau.edu, danm@hesston.edu, donofrij@dowling.edu, drechsel@aero.und.edu, dwilliams@ccbcmd.edu, dwilt@fit.edu, Deborah.abingdon@roswell.enmu.edu, gwescott@tulsacc.edu, jeichelberger@ccbcmd.edu, jmerkt@ju.edu, Jim.Scott@ccbc.edu, kuhlmank@msudenver.edu, linda.bracewell@minneapolis.edu, lwilkin2@aims.edu, mike.deml@minneapolis.edu, mmcfarl2@kent.edu, mnolan@purdue.edu, mtfranqui@gmail.com, Margaret.browning@hamptonu.edu, parrotwi@lewisu.edu, ron.ferrara@mtsu.edu, rpace@mgc.edu, rrogus@mtsac.edu, ryan.seiler@wmich.edu, sam.fischer@fscj.edu, sdaum@mtsac.edu, sharon.devivo@vaughn.edu, slanderson@stcloudstate.edu, stephenwest@ou.edu, Seanfortier@letu.edu, verne.latham@asu.edu, webbd@scc.losrios.edu, wyman_peter@dwc.edu, afach@uaa.alaska.edu, ancds@uaa.alaska.edu, aviation@greenriver.edu, Albert.culp@tstc.edu, beverly.byrdsong@hamptonu.edu, broganwi@lewisu.edu, Barb.soleta@aims.edu, Brad.Sherman@tstc.edu, carey.freeman@hamptonu.edu, ccheatum@fscj.edu, ckomsa@ccbcmd.edu, dbraun1@broward.edu, dcushwa@uaa.alaska.edu, dgallion@fscj.edu, dlewis4@mdc.edu, Dusty.lewis@roswell.enmu.edu, fieglr@erau.edu, forrestj@msudenver.edu, gcomollo@greenriver.edu, gregory.mcguirk@erau.edu, greverdi@fitaviation.com, gzlotky@mtsu.edu, hayden_scott@dwc.edu, idar@scc.losrios.edu, jboerger@kent.edu, jcain@fit.edu, john.gilding@asu.edu, joseph.gridley@asu.edu, jshakesp@broward.edu, juan.salmon@roswell.enmu.edu, JCALAF@bayamon.inter.edu, koplinkl@dowling.edu, lstephe4@aims.edu, millers@scc.losrios.edu, mtsuatc@mtsu.edu, mummeb6e@erau.edu, mwillet@ju.edu, Mary.Niemczyk@asu.edu, rcharles@mgc.edu, rpcapozzi@uaa.alaska.edu, ryates@ju.edu, RBancroft@tulsacc.edu, Rosalinda.Herrera@tstc.edu, Rusty.Chandler@cecilairport.com, sandraz@hesston.edu, sandyt@hesston.edu, senglish@broward.edu, smithabc@erau.edu, streitmi@lewisu.edu, Sshackelford@mtsac.edu, SteveKintner@letu.edu, trena.mathis@minneapolis.edu

Subject: Re: URGENT REQUEST: CTI Diversity initiatives

Terry,

The overwhelming efforts and initiatives that all CTI schools have leave no doubt that we are reaching out to everyone; however, I have to wonder if the FAA is doing the same. From my understanding of how the hiring panels operate is that the only information the panel members see are names, AT-SAT Scores, GPA, and whatever the student writes in a small comments section of the application. How can the FAA explain that they are looking for diversity yet they blind the very people who are supposed to hire a more diverse workforce by hiding diversity information from the hiring panel members?

Can you please clarify what information the hiring panel members see of each applicant?

Ramon

On Fri, Feb 8, 2013 at 6:43 AM, <terry.craft@faa.gov<mailto:terry.craft@faa.gov>> wrote:
CTI Partners;

As I have briefed in the past I am working on the CTI Diversity report that will be pushed up to the highest levels of the FAA.

As I have noted before, I am overwhelmed at the work that you do to reach out to those in under served communities and expose the profession to those who may not be aware of it.

I have compiled all the data that was collected and most important all the initiatives you have worked on this school year. I have transposed them from your evaluations into a single document that will accompany the data. (ATTACHED) I did not alter them, only formatted. Additionally I am going to write a preface to the report that will highlight the CTI commitment through your actions.

Most of you were very detailed in your evaluations and some, did just as asked and answered the question. I want to give you the opportunity to update and add any additional initiatives you may have so I can include them in the report that is being sent up next Friday.

If you have anything new or want to expand on the simple "yes" "no" answers send it to me in a word document no later than COB Tuesday 2/12/2013. I will update the report and add the information to your 2012-13 evaluations.

I can not stress enough how important it is to us for you to do what you do, I absolutely need to demonstrate this to those way way above.

Thanks again as always for being so responsive!

Terry


Terry L. Craft
AJI-216 Manager External Training Initiatives
Air Traffic Collegiate Training Initiative

www.faa.gov/go/atcti<http://www.faa.gov/go/atcti>
Tech Ops Collegiate Training Initiative
Flight Deck Training
Out of Agency Training
202.385.6788<tel:202.385.6788> (Office)
202.578.7627<tel:202.578.7627> (Mobile)


--
[http://www.waco.tstc.edu/docs/2194.jpg]
Ramon Claudio
ATC Department Chair
Texas State Technical College
3801 Campus Drive
Waco, Texas 76705
Office: 254-867-2086
Mobile 254-523-7519
Email: ramon.claudio@tstc.edu<mailto:ramon.claudio@tstc.edu>

"This email may contain the thoughts and opinions of Ramon Claudio and does not represent official Texas State Technical College-Waco policy."

# Exhibit 2

From: Joseph.Teixeira@faa.gov [mailto:Joseph.Teixeira@faa.gov]
Sent: Monday, December 30, 2013 2:19 PM
To: les.wilkinson@aims.edu; lstephe4@aims.edu; Verne Latham; Mary Niemczyk; Joseph Gridley; John Gilding; ecolageo@broward.edu; asikora@broward.edu; jshakesp@broward.edu;
senglish@broward.edu; dbraun1@broward.edu; Jim.Scott@ccbc.edu; hayden_scott@dwc.edu;
wyman_peter@dwc.edu; donofrij@dowling.edu; koplinkl@dowling.edu; LindenfM@dowling.edu;
dalyt@dowling.edu; Deborah.abingdon@roswell.enmu.edu; Dusty.lewis@roswell.enmu.edu;
juan.salmon@roswell.enmu.edu; Coynea7e@erau.edu; smithabc@erau.edu; mummeb6e@erau.edu;
gregory.mcguirk@erau.edu; frances.mitchell@erau.edu; Brent.Spencer@erau.edu;
Jack.Panosian@erau.edu; moore@fit.edu; dwilt@fit.edu; sam.fischer@fscj.edu; ccheatum@fscj.edu;
dgallion@fscj.edu; Margarita.Cabral-Maly@fscj.edu; cscott@greenriver.edu; gcomollo@greenriver.edu;
aviation@greenriver.edu; Eely@greenriver.edu; Margaret.browning@hamptonu.edu;
beverly.byrdsong@hamptonu.edu; eric.sheppard@hamptonu.edu; carey.freeman@hamptonu.edu;
sandyt@hesston.edu; danm@hesston.edu; sandraz@hesston.edu; mtfranqui@gmail.com;
JCALAF@BAYAMON.INTER.EDU; jmartinez@bayamon.inter.edu; ryates@ju.edu;
Rusty.Chandler@cecilairport.com; mwillet@ju.edu; jmerkt@ju.edu; mmcfarl2@kent.edu;
jboerger@kent.edu; rpriestl@kent.edu; lefton@kent.edu; Jonweber@letu.edu; Seanfortier@letu.edu;
SteveKintner@letu.edu; parrotwi@lewisu.edu; streitmi@lewisu.edu; broganwi@lewisu.edu;
kuhlmank@msudenver.edu; forrestj@msudenver.edu; vgolich@msudenver.edu; anaumann@mdc.edu;
dlewis4@mdc.edu; jeffery.thomas@mdc.edu; ataylor@mgc.edu; lhenry@mgc.edu; rpace@mgc.edu;
rcharles@mgc.edu; gzlotky@mtsu.edu; mtsuatc@mtsu.edu; ron.ferrara@mtsu.edu;
linda.bracewell@minneapolis.edu; David.Kangas@minneapolis.edu; trena.mathis@minneapolis.edu;
rrogus@mtsac.edu; Sshackelford@mtsac.edu; sdaum@mtsac.edu; bdbowen@purdue.edu;
mnolan@purdue.edu; congert@scc.losrios.edu; millers@scc.losrios.edu; idar@scc.losrios.edu;
webbd@scc.losrios.edu; slanderson@stcloudstate.edu; jwpalmer@stcloudstate.edu;
james.rowland@tstc.edu; ramon.claudio@tstc.edu; Rosalinda.Herrera@tstc.edu; Albert.culp@tstc.edu;
Brad.Sherman@tstc.edu; jeichelberger@ccbcmd.edu; dwilliams@ccbcmd.edu; ckomsa@ccbcmd.edu;
gwescott@tulsacc.edu; RBancroft@tulsacc.edu; rpcapozzi@uaa.alaska.edu; afsll@uaa.alaska.edu;
ancds@uaa.alaska.edu; dcushwa@uaa.alaska.edu; afach@uaa.alaska.edu; afrpc@uaa.alaska.edu;
lovelace@aero.und.edu; drechsel@aero.und.edu; craigc@aero.und.edu; nradl@aero.und.edu;
bsmith@aero.und.edu; kencarson@ou.edu; stephenwest@ou.edu; sharon.devivo@vaughn.edu;
domenic.proscia@vaughn.edu; felix.esquibel@wmich.edu; ryan.seiler@wmich.edu;
gil.sinclair@wmich.edu; dave.powell@wmich.edu
Subject: Hiring of Air Traffic Controllers by the FAA


Dear Colleagues,

The quoted text below, is an extract from letters we sent today to all our primary Collegiate Training Initiative (CTI) contacts. This email is being sent to an expanded list of CTI stakeholders to initiate a dialogue on upcoming changes to the hiring process for of air traffic controllers by the FAA.

"The Federal Aviation Administration (FAA) has enjoyed a long-standing relationship with your organization and values our partnership in the training of potential Air Traffic Controllers (ATC). Recently, the FAA completed a barrier analysis of the ATC occupation pursuant to the Equal Employment Opportunity Commission's (EEOC) Management Directive 715. As a result of the analysis, recommendations were identified that we are implementing to improve and streamline the selection of ATC candidates.

These improvements will have a direct and present impact on all hiring sources, including CTI. An overview of the immediate changes being made to the ATC hiring process is presented below.

Revisions to ATC Hiring Process

- A nationwide competitive FG-01 vacancy announcement open to all U.S. Citizens will be issued in February 2014. Any individual desiring consideration for employment (including CTI graduates) MUST apply. Existing inventories of past applicants will not be used.

- All applicants will be evaluated against the same set of qualification standards. Specifically, applicants must have at least 3 years of progressively responsible work experience, a 4 year degree, or a combination of the two.

- The existing testing process has been updated. The revised testing process is comprised of a biographical questionnaire (completed as part of the application process) and the cognitive portion of the AT-SAT. The cognitive portion of the AT-SAT will be administered only to those who meet the qualification standards and pass the biographical questionnaire. Applicants for the February 2014 announcement will be required to take and pass the new assessments in order to be referred on for a selection decision.

- Since a single vacancy announcement will be used for all applicant sources, a single nationwide referral list will be generated containing all candidates who meet the qualification standards and pass the assessments. Location preference will no longer be used as a determining factor for referral or selection.

Centralized selection panels will no longer be convened to make selections from the referral list. Selections will now be fully automated, grouping candidates by assessment scores and veteran's preference.

These improvements to the ATC hiring process will significantly strengthen the long term sustainability of our program and offer our candidates a fair and viable opportunity to demonstrate their capabilities and potential for the ATC position.

We recognize that you may have questions concerning these changes.

Considering the upcoming holiday season, we are planning a teleconference for Mid-January when we will more fully address questions and concerns you may have.

We want to reiterate that we very much value our partnership with the CTI program and look forward to assisting you in understanding our changes to the ATC selection process. We will be contacting you soon to schedule the January teleconference."

Best Regards, Joseph

Joseph Teixeira
Vice President for Safety &
Technical Training
Air Traffic Organization
Tel: 202-267-3341
Email: joseph.teixeira@faa.gov
(Embedded image moved to file: pic26439.gif)

# Exhibit 3

February 10, 2010

### National Black Coalition of Federal Aviation Employees

### MD-715 Compliance Effort

### TALKING POINTS

**BACKGROUND:** In late 2008, NBCFAE sent a letter to the FAA Office of Civil Rights requesting a copy of each of the last five years' **MD-715 Report** from FAA to the Equal Employee Opportunity Commission (EEOC). The FAA responded to that request by sending the reports for years 2004, 2005, 2006, and 2007. Upon receipt of those reports, the NBCFAE contracted with Dr. Herbert Wong and Associates to conduct an expert analysis of that information. That analysis was completed and the associated report was delivered to NBCFAE in the summer of 2009. Among the many conclusions drawn from that analysis, the following items stood out:

❖ The FAA/DOT is the least diverse agency/department, when compared to all the Executive Branch Departments in the Federal Government.

❖ The FAA/DOT has the lowest Percentage of Minority Employees in the Federal Civilian Workforce, when compared to all other Executive Branch Departments in the Federal Government.

❖ African Americans constitute 9.47 percent of the FAA Workforce as compared to 17.6 percent in the Federal Civilian Workforce. Thus, the FAA would be required to increase their complement of African American employees by 8.13 percent to reach parody with the Federal Civilian Workforce.

That information was very compelling and prompted the NBCFAE National Executive Board to seek cause(s) for the sustained under-representation of minorities and women within FAA.

In July of 2009, we sent an introductory letter to the FAA Administrator, and requested to meet with him concerning disparate treatment and under-representation in FAA. That request was denied, and we were informed the Administrator would not meet individually with Employee Associations. However, he would continue the practice of meeting with all employee association representatives jointly, at the National Employee Forum. That answer was not acceptable to the National Executive Board.

So, in October 2009, the board sent a follow-up letter to the Secretary of Transportation, and the FAA Administrator. That letter outlined our position that FAA is not in compliance with certain provisions of the EEOC's Management Directive (MD) 715, or the U.S. Supreme Court decisions related to the <u>Adarand</u> Construction, Inc. v. Pena, and the City of Richmond V J.A. <u>Croson</u> Co. We, again, requested to meet with the FAA Administrator. *(The specifics of these decisions will be placed on our website)*

## WHAT IS MD-715?

Management Directive 715 (MD-715) is the policy guidance which the Equal Employment Opportunity Commission (EEOC) provides to federal agencies for their use in establishing and maintaining effective programs of equal employment opportunity under Section 717 of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e *et seq.*, and Section 501 of the Rehabilitation Act of 1973 (Rehabilitation Act), as amended, 29 U.S.C. § 791 *et seq.* MD-715 provides a roadmap for creating effective equal employment opportunity (EEO) programs for all federal employees as required by Title VII and the Rehabilitation Act. It also sets forth the general reporting requirements for all federal agencies. MD-715 took effect on October 1, 2003.

## WHY SHOULD WE BE CONCERNED ABOUT THEIR NON-COMPLIANCE?

Under-representation of minority, women, and disabled employees is apparent in the FAA Workplace. Because of the agency's failure to comply with the provisions of MD-715, there is no actionable plan to effectively address those conditions. Thus, we continue to experience huge disparities in Hiring, Selections, Promotions, Pay, Awards, and Training/Development Opportunities, as compared to other federal employees.

## WHAT ARE WE DOING?

A group of senior members of NBCFAE (TEAM 7) drafted a plan to move the FAA towards the desired diversity in their workforce. In January 2010 that plan was approved by the National Executive Committee. While we will not reveal the full details of that plan, the following initiatives have been completed or are now in progress:

❖ As indicated above, we requested to meet with FAA Administrator Babbitt. That request was denied. However, on February 4, 2010 we met with official of FAA. The results of that meeting will be forthcoming. Meeting participants were:

### Federal Aviation Administration

Fanny Rivera, Associate Administrator for the Office of Civil Rights

Ventris Gibson, Associate Administrator for the Office of Human Resources

Jerry Mellody, Attorney for the Office of General Counsel, External Affairs

Julia Rhodes, Attorney for the Office of General Counsel, Personnel and Labor Law

### National Black Coalition of Federal Aviation Employees

Shaun Sanders, National President

Roosevelt Lenard, National Vice President

Margarete Berrios, Washington Headquarters Regional President

Ronald Bagley, EEO Action Committee Chairperson

❖ We have re-directed a portion of our National Operational Budget to support this effort.

❖ We are building a coalition of supporters from entities, outside the FAA, that possess the power to influence the FAA to do what is legally required, and right for its employees. The first organization to signup is the Reverend Jesse Jackson and Rainbow PUSH. Other Organizations we hope to bring on board include the NAACP, National Urban League, and Blacks-In-Government.

❖ We are contacting selected U.S. House and Senatorial Representatives about the ongoing problems, and requesting their assistance to call the FAA to task.

❖ We are re-initiating our efforts to gather information concerning discriminatory practices in the FAA.

❖ We are re-tooling our EEO Complaint training in order to educate members on more effective ways to address their EEO issues and/or successfully navigate the EEO Complaint process.

## WHAT CAN YOU DO?

❖ Become intimately familiar with the effort and be prepared to discuss it with others. (Members and Non-members)

❖ Join other civil rights based groups such as the Rainbow PUSH, NAACP, and Urban League, at the local level.

❖ Go to our new Website. Tailor the contact letter to fit your needs. Print the letter and mail it to your respective congressional representatives.

❖ Document the specifics of your personal experiences concerning FAA discriminatory practices, and send that information to:

> *Mr. Ronald Bagley*
> *NBCFAE EEO Action Chairperson*
> *2120 Grand Gleaton Pass*
> *Conyers, GA 30013*
> *Cell (770) 815-6885*
> *Fax (770) 785-6767*
> *Email:* Ronald.Bagley@nbcfae.org
> Bagss99@aol.com

❖ Learn the EEO process for yourself. Be available, and participate in the NBCFAE provided EEO Complaint training.

# Exhibit 4

TEAM 7 ON THE MOVE-VISIT TO THE HILL

Since the 2012 Las Vegas conference, Team 7 has made two trips to Washington to meet with government officials concerning the Federal Aviation Administration's (FAA) lack of an Affirmative Employment Plan as required by law. Today we are planning our next round of visits that will begin in January of 2013. Although our goal is in sight we have a great distance yet to travel. However please be advised that every effort will be made to use every resource available to reach our ultimate destination.

Several meetings were held on December 5, 2012 between members of NBCFAE Team 7 and Congressional Staffers.

The purpose of the meetings was to:

1.  Raise awareness reference FAA's lack of a legal and implementable Affirmative Employment Plan (AEP) in accordance with 29 CFR 1614.102(b) (4).
2.  Request support from congress to slow down or stop hiring of new employees until some changes are made by the FAA.
3.  Build relationships with bi-partisan Committee Members of the Congressional Transportation and Infrastructure Subcommittee.
4.  Continue to strive to build relationships with the Congressional Black Caucus (CBC).

Offices of Staffers who NBCFAE met with:

- Legislative Assistant to Congresswoman Marcia L. Fudge.
  - Congresswoman Fudge has been elected as the new Chair for the Congressional Black Caucus, effective January 2013. The agenda for the CBC's 2013 calendar is being developed. We requested that consideration be made to add our issues to their agenda. Although there may not be a lot of room for revisions Congresswoman Fudge will be briefed on our meeting and contact Ronald G. Bagley with follow up information. They want NBCFAE to forward all correspondence between NBCFAE and other Congressional offices. They also requested that we reach out and meet with the Congressional Tri-Caucus whose members comprise representatives from the Black, Asian and Hispanic congress.
  - Finally, we received assurance that NBCFAE have their support.
- Professional Staff, Aviation Subcommittee, Democratic Staff Director, Subcommittee on Aviation, Democratic Counsel Subcommittee on Aviation.
  - Of all the meetings held, this one with the three (3) bi-partisan members was also productive. Aviation Subcommittee Staffer was the lead for the group and stressed although she may not be a member of the Aviation Subcommittee in January 2013, she would be briefing her boss on the issues discussed. They will all follow up with NBCFAE after briefing their bosses.
- Legislative Correspondent for Congressman Henry "Hank" Johnson, 4th District of Georgia.

- There was no meeting scheduled with Congressman Johnson however, a "courtesy visit" proved to be meaningful.   The Legislative Correspondent asked follow up questions about MD-715 and how is EEOC addressing reports from FAA.  NBCFAE explained that MD-715 is simply a reporting tool and provides guidance for selecting officials and not an action plan.
- The question arose regarding previous congressional contacts and correspondence exchanges. The Correspondent requested copies of all correspondence exchanges be sent to him.  He also wanted to know if the Inspector General (IG) had seen the reports submitted by FAA.  Answer, no.
- We were advised that Congressman Johnson is trying to get back on the Transportation Committee.
- Director of Policies, Congressional Black Caucus.
  - This was a follow up meeting with the Director to do an overview of the previous meeting and we asked what can NBCFAE do to assist with getting the "ball rolling" again. We were told to continue to push.
    His office will follow up with the letter that was sent to the FAA and assess their response and share with Committee Chairman Ronald G. Bagley.

# Exhibit 5

# *TEAM SEVEN PROGRESS REPORT* 10-2-2013

**ISSUE:** For the past 18 years, the DOT/FAA has steadfastly refused to develop and implement an Affirmative Employment Program (AEP) as stipulated in 29 CFR 1614. 101 and in accordance with the Supreme Court rulings that such plans must be "narrowly tailored" and utilize "strict scrutiny" in implementation.

**RAMIFICATIONS:** An effective AEP would ensure fairness in recruitment, hiring, training, promotions, etc., in addition to eliminating trends and barriers for women and minorities in the workplace. As a result of this blatant violation of law and regulation, DOT/FAA is one of the least diverse federal agencies in America. The economic impact includes denial of jobs and advancement opportunities for Blacks and other minorities.

**INFORMATION:**

1. DOT/FAA submits one national MD-715 Report to EEOC and Congress that violates law and regulation because it is not "narrowly tailored" to specific geographiclocation (use United States Supreme Court Decisions, such as Adarand and Croson)
2. Reports indicate African-Americans in the DOT/FAA are significantly under

represented and are severely, adversely impacted by workplace discrimination.

**ISSUES/CONCERNS:**

1. Agency showing no accountability for improvement in workforce diversity
2. Agency does not apply "strict scrutiny" in identifying and taking action on under representation issues
3. MD-715 report does not provide a breakdown of statistics by geographic locality but presents only an overall national reporting synopsis.
4. There have been no effective programs to address under representation or workplace discrimination.
5. Current data is inaccurate due to narrow analysis and reporting.

**CONCLUSION:**

1. A systemic solution is necessary since this is a systemic problem due to the FAA's failure to utilize a legal plan that will hold management accountable for Civil Rights issues.
2. NBCFAE stands ready to be part of the solution.

Since the 2012 Las Vegas conference, Team 7 members have made several trips to Washington to meet with government officials concerning the Federal Aviation

Administration's (FAA) failure to address under representation of Blacks in the agency. Congressional visits included:
February- 40 offices
March – 6 offices including CBC and EEOC
June – 18 offices, FAA + consultants
August- EEOC and Attorneys Kator, Parks and Wiser and Office of the Congressional Black Caucus.
Our plan has three (3) prangs:

1. Continue to form external alliances with other civil rights organizations.
2. Continue to meet with members of congress.
3. File law suit.

For the Federal Aviation Administration to be successful in eliminating under representation in their recruitment, hiring, awards, promotion, retention, and training practices they must implement an affirmative employment program plan (AEP).
NBCFAE recommendations are that an AEP must include elements from President Obama's Executive Order 13583 (for Diversity Oversight) that will create a culture of collaboration, flexibility, and fairness to enable individuals to participate to their full potential; a plan that includes a continuing effort to identify and adopt best practices, that will improve the effectiveness of the agency's efforts to recruit, hire, promote, retain, develop, and train a diverse and inclusive workforce and that it be incorporated into the agency's human capital plan.

# Exhibit 6

**From:** "Shelton G. Snow" <shelton.snow@nbcfaene.org>
**Subject: Telcon Minutes (12/16/2013) Please Read Regarding FAA ATC Hire**
**Date:** December 16, 2013 10:47:35 PM EST



To:

Email addresses allegedly obtained by NBCFAE from FAA HR

Aspiring FAA Air Traffic Controllers,

I was delighted to share with you the process of becoming the next group of Air Traffic Controllers selected for FAA hire!

As promised, attached to this email is the minutes from tonight's telcon. Please consider this file as a checklist to prepare for the open bid. I can be reached for additional questions and/or comments.

Also attached is a membership application for those wanting to join our organization as Associate Members. I have already stressed the importance and the benefit of joining our organization. **Your membership will grant us the authority to represent youINDIVIDUALLY.** Join us to see and be seen. If you choose to join our beloved organization please complete the attached application and send it back to me via email. I am also attaching past newsletters that should give you a small view of what goes on in our organization. The check/money order shall be sent to:

NBCFAE National Treasure
Jacki Malone
6430 College Park
Atlanta, Ga. 30349

Please allow us the opportunity to serve you. We are the only organization of its kind. We have many gatherings within our Region that will place you up-close and personal to some of the most powerful men and women in the Air Traffic Organization (ATO). It's important to know that you will become a member of a winning team. Our region is distinguished as one of the best regions in the country. The

Washington Suburban Chapter has been recognized as the best operating Chapter in the country for 2 straight years. We are here for you. Our trenches are supplied with essentials that will give you the best chance to succeed.

May God continue to bless you and your families. Again, it's been a pleasure and I look forward to collaborating with each of you very soon. Good luck!

In Unity,

Shelton G. Snow
**Northeast Regional Vice-President**
**Washington Suburban Chapter President**
**\*\*\*2012 & 2013 National Chapter of the Year**
**\*\*\*2013 National Region of the Year**
**Email:** shelton.snow@nbcfaene.org
**Cell:** 757-589-0577

Associates Members TELCON

12/16/2013

Welcome

Introduction

- Name, JOB Title, Location, Transfer Status
- NBCFAE Title
- Introduce
  - Roosevelt
  - Ejide
  - Leslie
  - Ashley Morely
  - NBCFAE
    - http://www.nbcfae.org/content.aspx?page_id=22&club_id=303425&module_id=107292
    - http://www.nbcfae.org/content.aspx?page_id=22&club_id=303425&module_id=107294
- 1.    Groom members thought process to better corner achievement, heighten potential to advance up the managerial and/or facility ranks, and influence them to become the best at their craft; thereby making them a key professional in their  field of expertise.
- 2.    Be your voice of reason in catering to their needs as African-Americans and women in the FAA.
- 3.    Serve as a national directory – meaning that regardless of where they work the coalition is within reach to serve as their support group in a host of occurrences.
- 4.    Serve as a mentor, coach, and overseer of their training to ensure equality and fairness throughout the training program.
- 5.    Also serve as their professional network. This is important for those desiring transfers, promotions, and recommendations for leadership programs such as: ATCLP and PEL. You will discover that some of the most powerful black managers in the ATO stand united with younger generations of FAA employees, and together they stand as one voice! **It's just who you know, but it's how well you know them**
    - And in this case, preparing eligible members for FAA careers.

Appreciation

ABOUT THE FEBRUARY 10TH BID

I.    Date & Length of time it will stay open.
   a.  FEBRUARY 10, 2014

b. 2 weeks

II. Purpose of this telcon
   a. Ensure that you are locked and loaded by the end of the year.

III. What to do now.
   a. Start grouping resume's applicable records and upload them to USA Jobs (12/31).
      i. DD214
      ii. VA Disability confirmation Letters by the Department of Veterans Affiars.
      iii. Locate, scan and upload CTO and Radar Certifications.
      iv. Locate, scan and upload any information that will help validate your credentials in the hiring process.
      v. Locate, scan and upload everything NOW!
      vi. **FIRST AND FOREMOST....**check your email addresses. If your email address does not include your first and last name then change it. For example: Denzel.Washington@gmail.com. Explain why.
      vii. In the past we've had people on the selection panel we want them to be able to identify you.
      viii. Also, very important...on your resume please include if you are a NBCFAE Member. Most of you are Associate Member; put it on your resume! This is for us to know who our people are in the case that we have one of our very own on the board. In the past we've always had one, and they share our enthusiasm. **Can you see the strategy.**
   b. We are only concerned about African-Americans, Women (of every ethnic background), and other minorities. Please ensure that you share this information with no one that is identified outside of that. This information is reserve for those classes of people we represent. This is to minimize competition. We effort to influence the FAA to diversify the ATC workforce, and we aim to only prepare candidates that are demographically classed to meet that diversification.
   c. When you apply for the air traffic bid in the past it gave you an opportunity to choose a state in which you could be selected for. If that state is not available you will be passed over. PLEASE PUT ANYWHERE IN THE US ON THE APPLICATION, this will maximize the possibilities of you getting picked up.
   d. In the past the FAA has hired ATC candidates without regard to Affirmative Action.

IV. Introduction of the Barrier Analysis. (President Roosevelt)
   a. This is important!
   b. Please listen and pay close attention.
   c. This will explain why it is important for each of you to satisfy the purpose of this telcon. **That's all you can do. Your part is critical.**

V. More Information Regarding the Bid.
   a. There will be a test for ALL Applicants (regardless of filing status)

      i.   President Roosevelt, again, can you comment?

      ii.   70%, 85% or higher.

      iii.   VRA will also have to test.

      iv.   **There will be a practice exam released by the FAA towards the end of January.**  January 29, 2014 and February 12, 2014. It will be a virtual tour to the FAA's air traffic control occupation. Web address?

      v.

      vi.

  b.  **CTI Students**

      i.   **AT-SAT will not count for the FAA version of the test. You will need to retest. Allow the AT-SAT help you prepare for the FAA's test.**

      ii.   This will be an open/off-the-street-hire for air traffic candidates. **Everyone will be grouped together.**

      iii.   In the past there were a separate vacancy job announcement for filing status (VRA, CTI, and then there were the open/off-the-street-bid). That's over now. Everyone will be grouped together on this bid.

VI.   Membership

  a.  2 main categories of membership

      i.   Active

          1.  Describe

          2.  Dues Paying Members

      ii.   Associate

          1.  Any person who is not an employee of the FAA, but has an interest in NBCFAE, may become an Associate Member on such terms and with such privileges as the Membership Committee may provide.

          2.  $50 Year. Complete Membership Application, scan and email back to me. Mail Check or money order to

              a.  NBCFAE National Treasure. 6430 Jones Road. College Park, GA 30349

              b.  I will include each you in our chapter database

      iii.   Why should you become a member?

          1.  Website

          2.  The fact that we are having this telcon detailing specific information which could drastically change your circumstances indicates that we are heavily concerned your future as an ATCS in the FAA.

          3.  The NBCFAE is the largest, most successful and influential employee association in the agency. We exist because of people like you - potential and/or associate members looking for FAA

careers. We exist because of people like me – Active members that are constant in need of professional development and mentorship.

4. The question is not why should you join, the question is why should you not, because you have nothing to lose but a career in the FAA as an air traffic control specialist to gain. Let us label you.

VII.  RECAP the high-lit information.

VIII.  Questions

a.  Ask in the order those who called in on the telcon.

b.  Be specific, direct, and very on your question.

c.  These Q&A's, and the minutes of this telcon, will travel throughout the country to other Regional Presidents. This information will be used for them to host telcons throughout their region so your question may help them address concerns before they are asked.

d.  Do not let us move on without your question being answered.

IX.  Conclusion

# Exhibit 7

From: NER Vice-President & WSC President
<Shelton.snow@nbcfaene.org<mailto:Shelton.snow@nbcfaene.org>>
Subject: IMPORTANT!
Date: January 15, 2014 4:54:55 PM EST
To: REDACTED

WSC Brothers and Sisters,

It has been confirmed, there will NOT be a selection panel for the open bid on February 10th. Instead, FAA Human Resources will scan in resumes and the computer will group resumes based on key words (aka. "Buzz Words"). These buzzwords will flag your resume, thereby giving you the advantage over thousands of resumes that may flood the system. A list of these buzzwords are attached to this email. This list is being provided to you through one of our members in HR. I encourage you to keep a lid of this attachment and focus on YOUR resume. If the entire country caught wind of this attachment, then how will your resume be distinguished from others? After editing your resume using the attached file, resend me your resume for viewing. In the subject line type: "Amended Resume for (Name)".

Please keep this email confidential between yourselves and the NBCFAE. The information we share with you is to help members of our organization that has invested in their future through the NBCFAE.

In Unity,

Shelton G Snow
NER VICE-PRESIDENT
NBCFAE

# Exhibit 8

Subject: IMPORTANT UPDATE ON ATC Vacancy Announcement.
Date: Tuesday, January 28, 2014

**TO: NBCFAE Family,**

Please read the information below carefully.  This process is constantly evolving.

**_So here's what is fact so far._**

1. The controller vacancy announcement is open to all US citizens that meet the minimum qualifications of the vacancy.  Everyone interested should bid.  The list will also be used to fill future vacancies.

2. Rumors have been spreading that temporary offer letters (TOL) may still be offered to people that went through the old hiring process.  As you know this has been a big issue for NBCFAE.  I confirmed yesterday with agency leadership including AHR-1 that the agency will not offer jobs to people that may have been in that pipeline.  Their words were "That list has been purged.  So please tell everyone impacted by this to apply on the upcoming bid.

3. College Training Initiative (CTI schools:  During the holidays CTI schools were informed that they will no longer receive the preferences they have been receiving. I received a lot of feedback from people impacted by the change.  Some of it was very negative and some centered around not understanding why NBCFAE fought the issue the way it did. That conversation will continue but the bottom line is all CTI students need to apply on the upcoming bid.

4. Veteran Preference remains.  There will be more coming on this one.

5. There is an effort to hire people with targeted disabilities to work in the ATO.  The ATO has set a 2014 goal of hiring 10 people with targeted disabilities. The key word is the definition of targeted.  More to come.

**_WHAT WE DO NOT KNOW_**
We do not know exactly what the new ATSAT test will look like.  We have a general idea based on the skill set needed to perform the job. The test will have two components: a biographical test and a cognitive test. You will have to pass the biographical portion to take the cognitive portion.

We do not know exactly how the selection factors will be applied but we do know that a diverse pool must come from the process.

The Federal Aviation Administration (FAA) is still working on both of the above issues and as soon as I know you will know.  Please bear with me if it takes time.  I want to share the correct information the first time.

**_WHAT'S DIFFERENT_**
The hiring process for applicants will be a modified Pepsi hiring process which means there will be five locations where a person can travel to at their own expense to go through the hiring process before attending the academy.  The locations are Seattle, Dallas, Atlanta, Chicago and the fifth site is to be determined.

Applicants will be able to go through the security and human resources part of the process but will have to handle their medical clearance separately.  If a person chooses not to use the Pepsi process then they will still have the option to use the standard hiring process which takes more time. More to come.

The FAA plan to issue a number of vacancy announcements on February 10, 2014 for air traffic control specialists on a nation-wide basis.  It will only be open for 10 days.  Go to the link below:
http://www.faa.gov/jobs/career_fields/aviation_careers/

Visit the FAA Virtual Career Fair (VCF) and learn about select aviation careers FAA is offering. FAA recruitment experts will be available for live chats on Jan. 29, 12–4 p.m. EST, and Feb. 12, 12–4 p.m. EST.  To register for the VCF and to learn about these aviation careers, go to http://vshow.on24.com/vshow/network/registration/5492
Also, visit the USAJOBS Resource Center at help.usajobs.gov to learn how to build your resume and access tips and tutorials on applying and interviewing for federal jobs. You are highly encouraged to use the resume builder. available on the USAJOBS website usajobs.gov.

***Let me say a few things in closing.***

We have been very successful in spreading the word on this announcement and it is no surprise, especially in these times, that the response has been enormous.  I have seen so many diverse and talented young folks looking for opportunities.  Our challenge is to assist them in any way we can to find opportunities wherever they can including in other areas of the federal government if possible.  More to come and we will need your help.

NBCFAE has a proud history of helping everyone who ask us for help.  We do not ask the ethnicity of anyone seeking our assistance and we want the best and brightest to work for the FAA. I believe what is sometimes lost is that we are also the best and brightest.  NBCFAE's goals include assisting in recruiting African Americans, females, and minority individuals into the FAA and to promote equal employment opportunities through all lawful means. We do not apologize for our commitment to that end.

We encourage everyone to become members of NBCFAE.  We believe that NBCFAE's work speaks for itself and we encourage people to become a member.  Please go to www.NBCFAE.org.  Click on the Member Login on the Home Page.  Then go to the Resources header.  Use the drop down menu to go to Documents and then to ATC vacancy for additional information on the ATC hiring process.

Please email any questions you have to me.  I will compile them and send a Frequently Asked Questions often.

Have a GREAT DAY!


 In Unity,
Roosevelt Lenard, Jr.
NBCFAE National President

# **Exhibit 9**

*NBCFAE'S TEAM SEVEN UPDATE*    January 30, 2014



*Ronald Bagley, NBCFAE EEO Chairperson*

## CURRENT ACTIVITIES:

Ronald Bagley  has been attending the Coalition for the Peoples' Agenda meeting (Rev. Dr. Joseph E. Lowery's group). Randy Williams continues to work with the Moral Monday group on behalf of Team 7.

## Pending & Ongoing

Schedule meeting with Washington, DC Congressional Black Caucus (CBC) for some time in February.

Follow up on our face to face in March regarding the items below:  Questions to Federal Aviation Administration (FAA) Administrator Michael P. Huerta regarding the FAA's barriers and its trend analysis of the workforce's major occupations by race, national origin, sex and disability.  FAA's responses were that they are working on the issues. DOT alliances indicated to the CBC that they should actively remain on this discrimination issue.

CBC leaders met with DOT and FAA to discuss the agency's hiring process.  Next steps are to include appropriations language in to the FAA letters as this may be a vehicle that could remove these barriers very quickly.  Additionally, CBC's support to NBCFAE is to ask for best practices that align to FAA's hiring practices for a concentration of minority hiring.

Also, during this visit met with CBC constituents including Congressman Elijah E. Cummings (House Representative, Maryland).  Congressman Cummings, Chair of the Committee on Oversight and Government Reform is engaged with the CBC Policy Director and will aid in the development of strategies regarding FAA's infrastructure and political taskforce.

Follow up with membership (joining) requirements of the Coalition of the Peoples Agenda.  Follow up on a meeting with Dr. Joseph E. Lowery; currently pursuing information on the status of the IOU's from our last meeting with Rainbow PUSH Coalition's Vice President of Legal Affairs, Attorney Janice E. Mathis.  We then will move forward on the following: Letter to and meeting with DOT, FAA and EEOC.