**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Andrew J Brigida,<br><br>　　　　Plaintiff,<br><br>v.<br><br>United States Department of Transportation, et al.,<br><br>　　　　Defendants. | No. CV-15-02654-PHX-DLR<br><br>**ORDER** |

Defendants have filed a motion to dismiss. (Doc. 27.) The motion is fully briefed.[1] For the reasons below, the motion is granted.

## **BACKGROUND**

This lawsuit arises out of Plaintiff Andrew Brigida's failed application for employment as an air traffic controller with the Federal Aviation Administration (FAA). Prior to 2014, as part of their hiring program, the FAA considered candidates who completed Air Traffic-Collegiate Training Initiative (CTI) programs at approved CTI Institutions. (Doc. 26, ¶¶ 22-24.) To be eligible for employment as a trainee controller, graduates of these programs were then required to pass an air traffic aptitude test, known as the Air Traffic Control Selection and Training (AT-SAT) exam. (*Id.*, ¶ 26.) Once the candidates graduated from an approved CTI Institution and passed the AT-SAT, they

---

[1] Plaintiff's request for oral argument is denied. The issues are fully briefed, and the Court finds that oral argument will not aid in the resolution of this matter. *See* LR Civ. 7.2(f); Fed. R. Civ. P. 78(b).

were entered into a "direct hire pool of applicants, were placed on a Qualified Applicant Register List, and were given hiring preference for Air Traffic Control Specialist" (ATCS) positions. (*Id.*, ¶ 31.)

In 2013, the FAA decided to modify its hiring process and notified candidates that it was "planning to open a general public announcement in FY 2014 to add more depth and diversity to [its] controller hiring sources." (*Id.*, ¶ 41.) As part of this new hiring strategy, the FAA required all applicants, including CTI graduates, to apply through this vacancy announcement. (*Id.*, ¶ 49.) A revised testing process was also implemented, under which candidates were required to complete a biographical questionnaire (BQ). (*Id.*, ¶ 50.) If the candidate passed the BQ, he would then be eligible to take the cognitive portion of the AT-SAT and be referred for a selection decision. (*Id.*)

On May 13, 2013, around the time the FAA began modifying its hiring practices, Brigida passed the AT-SAT exam "with the top numerical score possible of 100%." (*Id.*, ¶ 76.) On August 13, 2013, he graduated from Arizona State University's FAA-approved CTI program. (*Id.*, ¶ 77.) That same month, ASU recommended him to the FAA and he was placed on the Qualified Applicant Register. (*Id.*, ¶¶ 77-78.) In December 2013, however, the new hiring process took effect and "the FAA eliminated the CTI Applicant Register, which resulted in Plaintiff Brigida, and other putative Class Members, losing their employment preference and opportunity." (*Id.*, ¶ 52.)

On January 27, 2014, Brigida was informed of the changes to the hiring process and was told that he should reapply under the new process. (*Id.*, ¶ 79.) On February 10, 2014, Brigida reapplied for the position, and on February 27, 2014, the FAA notified him that he failed the BQ, and was therefore ineligible for hire. (*Id.*, ¶¶ 80, 82.) In the following months, Brigida applied for thirty-six positions with the FAA, but was never hired. (*Id.*, ¶ 87.)

In December 2015, Brigida filed suit challenging the FAA's new hiring process. (Doc. 1.) Several months later, on July 15, 2016, "Congress passed the FAA Extension, Safety, and Security Act of 2016, which, *inter alia*, addressed the hiring of ATCS

positions by the FAA." (Doc. 26, ¶ 67.) The Act provides that the "FAA should give preferential treatment for ATCS positions to qualified individuals maintaining 52 consecutive weeks of civilian or military air traffic control experience." (*Id.*, ¶ 68.) The remaining ATCS positions are then hired equally out of two pools. (*Id.*, ¶ 69.) The first pool is made up of: (1) CTI graduates who have received recommendations from their institution, (2) honorably discharged veterans, (3) eligible veterans with aviation experience, and (4) preference eligible veterans. (*Id.*, ¶ 70.) The second pool is made of up "off-the-street" (OTS) applicants. (*Id.*, ¶ 71.) The Act "prevents the FAA from using the [BQ] on applicants from the first pool," but "does not prevent the FAA from using the [BQ] on OTS hires." (*Id.*, ¶ 72.) Further, the Act permits any applicant who was previously disqualified as a result of the BQ to reapply for an ATCS position. (*Id.*, ¶ 74.)

On August 19, 2016, Brigida filed a two-count second amended class action complaint against Anthony Foxx, Secretary, U.S. Department of Transportation; the FAA; Michael Huerta, Administrator, FAA; and Stephanie Jones, Acting Director, Departmental Office of Civil Rights, U.S. Department of Transportation. (Doc. 26.) He alleges that the FAA's hiring practice violates Title VII and the equal protection component of the Fifth Amendment. (*Id.*, ¶¶ 97-114.) He seeks damages and an order directing the FAA "to reinstate the purged Qualified Applicant Register and give hiring preference to Plaintiff Brigida and other putative Class Members." (*Id.*)[2]

## **LEGAL STANDARD**

To survive dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The task when ruling on a motion to dismiss "is to evaluate whether the claims alleged [plausibly] can be asserted as a matter of law." *See Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When

---

[2] Brigida does not challenge the recently enacted FAA Extension, Safety, and Security Act of 2016.

analyzing the sufficiency of a complaint, the well-pled factual allegations are taken as true and construed in the light most favorable to the plaintiff. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). However, legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Iqbal*, 556 U.S. at 680, and therefore are insufficient to defeat a motion to dismiss for failure to state a claim, *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2008).

## ANALYSIS

Defendants move to (1) dismiss Brigida's Equal Protection claim and all Defendants except Anthony Foxx, (2) strike Brigida's request to reinstate the hiring preference for CTI graduates, and (3) transfer the remainder of this action to the District of Columbia. The Court will address each issue in turn.

**I. Equal Protection Claim**

Brigida alleges that the FAA's adoption of the "new hiring practice for Air Traffic Controllers with the intent and purpose of increasing racial diversity of Air Traffic Controller applicants" violates the equal protection component of the Fifth Amendment. (Doc. 26, ¶¶ 105, 112.) Defendants argue that this claim must be dismissed because Title VII is the exclusive remedy for claims of discrimination in employment. The Court agrees with Defendants.

"Section 717 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16 (1970 ed., Supp. IV), proscribes federal employment discrimination and establishes an administrative and judicial enforcement system." *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 829 (1976).[3] In *Brown*, the Supreme Court held that § 717 is a "precisely drawn, detailed statute [that] preempts more general remedies," and thus it "provides the exclusive judicial remedy for claims of discrimination in federal employment." *Id.* at 834-35. In cases where the plaintiff brings a Title VII claim, courts have rejected supplemental statutory and constitutional claims where such claims were remediable

---

[3] Section 717 "extends Title VII protection to federal employees[.]" *Smith v. Lujan*, 780 F. Supp. 1275, 1279 (D. Ariz. 1991).

- 4 -

under Title VII or involved the same factual predicate. *See Otto v. Heckler*, 781 F.2d 754, 756 (9th Cir. 1986) (harassment claim not actionable because it was remediable under Title VII); *Nolan v. Cleland*, 686 F.2d 806, 814-15 (9th Cir. 1982) (striking due process claim based on the same facts as Title VII claim). The Ninth Circuit has held that equal protection claims fall under this purview, *see Brazil v. U.S. Dep't of Navy*, 66 F.3d 193, 197 (9th Cir. 1995) (rejecting equal protection claim brought under *Bivens*), and other circuits have reached the same conclusion, *see e.g.*, *Mlynczak v. Bodman*, 442 F.3d 1050, 1056-57 (7th Cir. 2006) (rejecting equal protection claim because "*Brown* squarely holds that § 717 provides the exclusive judicial remedy for claims of discrimination in federal employment" (internal quotation marks omitted)); *Belhomme v. Widnall*, 127 F.3d 1214, 1217 (10th Cir. 1997) ("Title VII preempts any constitutional cause of action that a court might find under the First or Fifth Amendments for discrimination in federal employment.").

Here, Brigida's equal protection claim relies on the same allegations that form the basis of his Title VII claim. (Doc. 26, ¶¶ 97-114.) He alleges the FAA's decision to purge the Qualified Applicant Register was made with the purpose of increasing diversity, which "constituted intentional racial discrimination." (*Id.*, ¶¶ 101, 107.) Moreover, he seeks the same remedies in both claims: (1) an order directing the FAA to reinstate the Qualified Applicant Register and give hiring preference to Brigida, and (2) damages in the form of back pay, front pay, hiring, and reinstatement. (*Id.*, ¶¶ 102-03, 113-14.) Not only is Brigida's equal protection claim based on the same factual predicate as his Title VII claim, but it is also remediable by his Title VII claim. As such, his equal protection claim is precluded by § 717.

Brigida argues that his equal protection claim is necessary because Title VII does not vindicate all of his constitutional rights. (Doc. 29 at 14.) He asserts the violation of his rights under Title VII "is not coextensive with the violation of his rights under the Fifth Amendment." (*Id.*) But he fails to specify how his Title VII claim affords less relief than his equal protection claim. In fact, he seeks the same remedies under both

counts. Moreover, Brigida fails to cite a single case in which a plaintiff bringing a Title VII employment discrimination claim was permitted to also maintain a separate constitutional claim with the same factual predicate.

Brigida also argues that *Brown* and *Brazil* are distinguishable because they dealt with statutory claims and a *Bivens* claim, respectively. (Doc. 29 at 15.) But *Brown*'s holding is clear: § 717 is the "exclusive judicial remedy for claims of discrimination in federal employment." *Brown*, 425 U.S. at 829. Contrary to Brigida's claim, *Brown*'s holding is not based on the doctrine of sovereign immunity, (Doc. 29 at 5), but the fact that the "balance, completeness, and structural integrity of [§ 717] are inconsistent with the . . . contention that the judicial remedy afforded by [a § 717 action] was designed merely to supplement other putative judicial relief." *Id.* at 832. Thus, that the rejected claims were statutory in nature, as opposed to constitutional in nature, does not affect *Brown*'s application to this case, where Brigida has brought a Title VII action seeking the same relief as his equal protection claim. Likewise, that the plaintiff in *Brazil* brought his equal protection claim in the *Bivens* context is of no import. The result is the same: Title VII's remedies are triggered, thereby precluding Brigida's equal protection claim.[4]

Because Brigida's Title VII claim is the only remaining claim in this action, several Defendants must be dismissed. "[W]hen a federal employee alleges employment discrimination, the only proper defendant is the head of the agency which employs them." *Ardalan v. McHugh*, No. 13-CV-01138-LHK, 2013 WL 6212710, at *20 (N.D. Cal. Nov. 27, 2013) (internal quotation marks omitted). Anthony Foxx is the head of the U.S. Department of Transportation—the department that would have employed Brigida. (Doc. 26, ¶ 5.) Thus, Defendants U.S. Department of Transportation, Federal Aviation Administration, Michael Huerta, and Stephanie Jones are dismissed from this action.[5]

## II. Request to Reinstate Hiring Preference

---

[4] In fact, Brigida's equal protection claim *is* a *Bivens* claim insomuch as it seeks damages for constitutional violations committed by federal officials. *Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971).

[5] Brigida does not oppose dismissal of these Defendants. (Doc. 29 at 5 n.1.)

- 6 -

In his prayer for relief, Brigida seeks an "order directing the FAA to reinstate the purged Qualified Applicant Register and give hiring preference to Plaintiff Brigida and other Putative Class Members[.]" (Doc. 26 at 25.) Defendants argue that this request is improper because Brigida does not challenge the recently enacted FAA Extension, Safety, and Security Act of 2016, which imposes new hiring practices for Air Traffic Controllers. The Court agrees.

Brigida's request is equitable in nature, but "[c]ourts of equity can no more disregard statutory and constitutional requirements and provisions than can courts of law." *Armstrong v. Exceptional Child Care Ctr., Inc.*, 135 S. Ct. 1378, 1385 (2015). In enacting the FAA Extension, Safety, and Security Act, Congress sought to give hiring preference to more experienced air traffic controllers. *See* 49 U.S.C. § 44506(f)(1)(A) (giving preference to "qualified individuals maintaining 52 consecutive weeks of air traffic control experience"). The Act eliminates the BQ for CTI graduates, but does not restore the Qualified Applicant Register or give hiring preference to CTI graduates who pass the AT-SAT. Brigida admittedly does not challenge the Act under Title VII; his challenge remains against the FAA's elimination of the Qualified Applicant Register at the end of 2013. Although Title VII permits the Court to "order such affirmative action as may be appropriate" to make Brigida whole, 42 U.S.C. § 2000e-5(g)(1), the Court cannot prescribe relief in contravention of an unchallenged statute.

Brigida argues that the Act does not grant full relief to him and the putative class members. (Doc. 29 at 17.) He asserts that the Act "can only limit relief in this case if the Court decide[s] that the 2016 Act expressly repeals or amends the enforcement provisions of Title VII." (*Id.* at 18.) But the effect of the Act on Title VII is irrelevant. The Act supersedes the FAA hiring practices challenged by Brigida in this suit. Brigida does not dispute that the hiring practices he originally challenged are no longer employed by the FAA—the BQ is no longer used to evaluate CTI graduates. Nor does he argue that the Act discriminates in hiring on the basis of race. Boiled down further, his allegations reveal that he is simply dissatisfied that the FAA changed its hiring practices and decided

to give preference to more experienced controllers, which the FAA is free to do as long as it does not violate Title VII.

Furthermore, Brigida cites no authority for granting the equitable relief he seeks. If the Court granted his requested relief, the FAA would be bound by two inconsistent directives: (1) a court order to reinstate the Qualified Applicant Register and give preference to CTI graduates who passed the AT-SAT, and (2) the Act, which directs that hiring preference be given to experienced Air Traffic Controllers. Brigida does not argue that both of these directives can reasonably be accomplished. Accordingly, the Court strikes this claim for relief from the second amended complaint.

**III. Transfer**

Defendants argue that the remainder of this action should be transferred to the District of Columbia. They argue that venue is improper in this district, and even if venue is proper, the Court should exercise its discretion and transfer this action for the convenience of the parties. Defendants also point out that, since filing this lawsuit, Brigida has relocated from Arizona to Arlington, Virginia—a few miles outside of Washington, D.C. Because venue is improper in this District, the Court will not address whether discretionary transfer is warranted.

**A. Improper Venue**

Venue for a Title VII claim is proper (1) "in any judicial district in the State in which the unlawful employment practice is alleged to have been committed," (2) "in the judicial district in which the employment records relevant to such practice are maintained and administered," (3) "or in the judicial district in which the aggrieved person would have worked but for the unlawful employment practice." 42 U.S.C. § 2000e-5(f)(3). "Plaintiff has the burden of proving that venue is proper in the district in which the suit was initiated." *Golden Scorpio Corp. v. Steel Horse Bar & Grill*, 596 F. Supp. 2d 1282, 1286 (D. Ariz. 2009) (internal quotation marks omitted).

It is undisputed that (1) the FAA's decision to adopt a new hiring process was made in Washington, D.C., (2) the relevant employment records are kept at the FAA

headquarters in Washington, D.C., and (3) Brigida cannot demonstrate that he would have worked in Arizona but for the alleged unlawful employment practice. Brigida argues, however, that courts have found that "venue is proper in both the forum where the employment decision is made and the forum in which that decision is implemented or its effects are felt." *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 506 (9th Cir. 2000). Relying on *Passantino*, he asserts that he was a resident of Arizona when he applied for the ATCS position, and therefore the effects of the FAA's decision to change its hiring practices were felt in Arizona. (Doc. 29 at 20.)

In *Passantino*, the plaintiff brought a failure-to-promote claim in the Western District of Washington, where she worked for nearly two decades. 212 F.3d at 500-03. The defendant argued that venue was proper in New Jersey where the decision to take the unlawful employment action was made. *Id.* at 504. The court rejected the defendant's argument, noting that "venue should be found where the effect of the unlawful employment practice is felt: where the plaintiff works, and the decision to engage in that practice is implemented." *Id.* at 505.

The court in *Davidson v. Korman*, No. C 09-1695 SBA, 2010 WL 3515760, at *3 (N.D. Cal. Sept. 8, 2010) addressed *Passantino*'s ruling, and the Court finds its reasoning persuasive. In *Davidson*, the plaintiff worked as an attorney for the Army Corps of Engineers in Sacramento, California, but lived in San Francisco. *Id.* at *1. She filed a retaliation claim under Title VII in the Northern District of California. *Id.* The defendants moved to dismiss for improper venue, arguing that the alleged unlawful employment practices occurred in Sacramento, which is in the Eastern District of California. *Id.* at *2. The relevant employment records were also kept in that district. *Id.* Relying on *Passantino*, the plaintiff argued that venue was proper in San Francisco because she lived there and felt the effects of the unlawful employment decision there. *Id.* at *3. The court rejected this argument, noting that "an out-of-context quotation" from *Passantino* does not support venue in the district where the plaintiff lived or "had interactions with . . . in connection with her job." *Id.*

- 9 -

The result is no different here. Like *Davidson*, Brigida argues that venue is proper in this District simply because he once lived here. A close reading of *Passantino* reveals that its holding should not be construed so broadly. The court began by noting that, "[i]n general, the effect if Title VII's venue provision is to allow suit in the judicial district in which the plaintiff worked or would have worked." 212 F.3d at 504-05. To further support its decision, the court relied on principals of personal jurisdiction, namely that jurisdiction is proper over a defendant who has no contacts with the state if the effects of the defendant's actions are felt in that state. *Id.* at 505. Indeed, it necessarily follows that plaintiffs who are "unlawfully denied a promotion . . . feel the effects of their injury where they actually work." *Id.* The court appeared to define the phrase "where the effect of the unlawful employment practice is felt," as the place "where the plaintiff works, and the decision to engage in that practice is implemented." *Id.*

Here, Brigida never worked for the FAA. He simply filed suit in Arizona because he lived here at the time. Under *Passantino*, venue is not proper—Brigida did not work in Arizona and the alleged unlawful practice was not implemented here. In fact, the argument for venue is this case is even more attenuated than that posed in *Davidson*, given that Brigida has since moved from Arizona to Arlington, Virginia, and thus can no longer reasonably assert that the effects of the alleged unlawful employment decision are felt here. Consequently, the Court finds that venue is improper in this district.

**B. Transfer of this Case to the District of Columbia is Appropriate**

Because venue is improper in this district, the Court may "transfer [the] case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Defendants seek transfer to the District of Columbia. Brigida seeks transfer to the Western District of Oklahoma because "all CTI graduates must complete a training course at the FAA Academy in Oklahoma City upon hiring by the FAA." (Doc. 29 at 23.) Therefore, he asserts he "would have worked in Oklahoma City, at least for the length of [his] training." (*Id.* at 23-24.) Brigida also asserts that relevant witnesses are located there and that "meetings that preceded the challenged actions were held in

Oklahoma City." (*Id.* at 24.) Last, he argues that the Western District of Oklahoma would be more convenient for his witnesses and counsel. (*Id.*)

The Court finds that this action should be transferred to the District of Columbia. Defendant is headquartered there, Brigida lives close nearby, the relevant documents are located there, the alleged discriminatory employment actions were taken there, and Defendants have several witnesses that are located in or near the area. (Doc. 27-1, ¶¶ 2, 4-6, 10, 12, 13, 15.) It is undisputed that this action could have been filed in that district. Brigida identifies no witnesses that will be required to travel a great distance to testify. Nor does he identify the content of the alleged meetings that took place in Oklahoma City. As such, the most appropriate and convenient venue for the parties is the District of Columbia.

**IT IS ORDERED** that:

1. Defendants' motion to dismiss, (Doc. 27), is **GRANTED**.
2. Count two of the Second Amended and Supplemental Complaint is **DISMISSED**.
3. Defendants U.S. Department of Transportation, Federal Aviation Administration, Michael Huerta, and Stephanie Jones are **DISMISSED**.
4. Plaintiff's request that the Qualified Applicant Register be reinstated and that hiring preference be given to CTI graduates who passed the AT-SAT is **STRICKEN** from the Second Amended and Supplemental Complaint.
5. This Clerk is directed to **TRANSFER** this action to the United States District Court for the District of Columbia.

Dated this 4th day of November, 2016.

Douglas L. Rayes
United States District Judge